IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. 8:25-cv-36

STATE OF FLORIDA; and FLORIDA
AGENCY FOR HEALTH CARE
ADMINISTRATION,

*Plaintiffs*,

v.

CENTERS FOR MEDICARE AND
MEDICAID SERVICES; CHIQUITA
BROOKS-LASURE, *in her official capacity as
Administrator for the Centers for Medicare and
Medicaid Services*; DEPARTMENT OF
HEALTH AND HUMAN SERVICES; and
XAVIER BECERRA, *in his official capacity as
Secretary of Health and Human Services*,

*Defendants*.

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### INTRODUCTION

1.     On June 22, 2023, Governor DeSantis signed into law Florida H.B. 121 to substantially expand the provision of subsidized health insurance to children in the State of Florida. *See* An Act Relating to Florida KidCare Program Eligibility, H.B. 121, 2023 Leg. (Fla. 2023). That program, and especially its expansion, has long depended on the collection of monthly premiums from program participants. The Biden Administration has unlawfully sought to undermine that requirement,

threatening the program's solvency, long-term stability, and expansion to more children in need.

2.      The State of Florida has provided subsidized health insurance for more than three decades to children in low- and moderate-income families who do not qualify for Medicaid. Since 1998, Florida has administered this insurance as part of the Children's Health Insurance Program ("CHIP"), a federal-state partnership under Title XXI of the Social Security Act, Pub. L. No. 105-33, 111 Stat. 251 (1997). As of October 2024, Florida CHIP provides subsidized insurance coverage for more than 150,000 children. Florida KidCare, *Expenditure Social Services Estimating Conference* 9 (Dec. 17, 2024).

3.      An essential feature of Florida CHIP is its tiered cost-sharing. Families who enroll at least one child in the program are required to pay a monthly premium to obtain insurance coverage, currently between $15 and $20 dollars. Failure to pay the monthly premium, after a 30-day grace period, results in disenrollment. State of Florida, Amendment FL-22-0034-CHIP, *Florida KidCare Program* 22–23, 97–98, 176–78 (Mar. 11, 2021) ("*Florida KidCare Program*"), https://perma.cc/SJA7-GZQD. If a family becomes eligible for a tier with a lower premium due to loss of income, that is also available. *Id.* at 191. These premiums offset program costs, ensure Florida maintains a balanced budget as required by its state constitution, and preserve Florida CHIP as a bridge between Medicaid and private insurance rather than an entitlement.

2

4.    Congress has been clear that CHIP is not an entitlement program. 42 U.S.C. § 1397bb(b)(5). Accordingly, Congress has allowed cost-sharing with CHIP participants, including through required monthly premiums and disenrollment of CHIP participants for nonpayment. *Id.* § 1397cc(e). The Centers for Medicare and Medicaid Services ("CMS") in the Department of Health and Human Services ("HHS"), which administers CHIP for the federal government, has likewise recognized cost-sharing and disenrollment for nonpayment of premiums. 42 C.F.R. § 457.342(b) (2024); *id.* §§ 457.500–457.570.

5.    Florida has further offered CHIP participants 12 months of "continuous eligibility" for almost two decades. *Florida KidCare Program*, *supra*, at 83, 91–92. With limited exceptions, that means Florida will not revisit an eligibility determination for a CHIP participant for the subsequent 12 months, even if the child's household income increases. Starting in 2016, CMS regulations similarly allowed States to voluntarily offer continuous eligibility. 42 C.F.R. § 457.342(a) (2024) ("A State *may* provide continuous eligibility for children under a separate CHIP...." (emphasis added)). Both have existed alongside premium requirements as a condition of enrollment and maintaining CHIP coverage. *See id.* § 457.342(b) (2024) (permitting participants to "be terminated during the continuous eligibility period for failure to pay required premiums or enrollment fees required under the State plan").

6.    On November 27, 2024, CMS published a Final Rule to revise 42 C.F.R. § 457.342, requiring that "[a] State must provide" 12 months of "continuous

3

eligibility" for CHIP participants and rescinding § 457.342(b), which previously acknowledged a State's authority to disenroll CHIP participants for nonpayment of premiums during periods of continuous eligibility. *Medicaid and CHIP Continuous Eligibility*, 89 Fed. Reg. 93912, 94462–67 (Nov. 27, 2024) (effective Jan. 1, 2025).[1] The Final Rule invoked section 5112 of the Consolidated Appropriations Act, 2023 ("2023 CAA"), which amended the Social Security Act to require 12 months of continuous eligibility for participants in Medicaid and CHIP. Pub. L. No. 117-328, § 5112, 136 Stat. 4459, 5940 (2022).

7.      The Final Rule is contrary to law and exceeds CMS's authority. CHIP is not "an entitlement to child health assistance," 42 U.S.C. § 1397bb(b)(5), and thus a child can be *eligible* for CHIP benefits without being *enrolled* in a CHIP plan or receiving subsidized insurance coverage. Both Congress and CMS have repeatedly distinguished between eligibility and enrollment under Title XXI, and Congress has even allowed "termination of coverage" for "failure to make a premium payment" without reference to the participant's eligibility. *Id.* § 1397cc(e)(3)(C)(ii)(I). The 2023 CAA requires only that a child "remain *eligible* for [CHIP] benefits" during the specified period, not that a child remain *enrolled* in CHIP. 2023 CAA, § 5112(a) (emphases added). The Final Rule is thus inconsistent with the plain meaning of the 2023 CAA and the broader context of Title XXI.

---

[1] Florida challenges only the provisions of the Final Rule related to CHIP continuous eligibility.

8.    The Final Rule is also arbitrary and capricious because it is not reasonable or reasonably explained. It ignores the long-standing distinction between eligibility for CHIP benefits and enrollment in a CHIP plan, rejects the best reading of the relevant statutory provisions, and fails to respond to comments raised by the Florida Agency for Health Care Administration ("AHCA").

9.    The Final Rule threatens the integrity of Florida CHIP, including the tens-of-millions of dollars collected in premium payments annually. *See, e.g.*, Florida KidCare, *Expenditure Social Services Estimating Conference, supra*, at 26, 45, 93; *see also Florida H.R. Staff Final Bill Analysis: H.B. 121*, at 7 (June 23, 2023), https://perma.cc/B8NB-RCPZ (projecting approximately $30 million in annual premium payments under the current program). CMS is imposing an expansion of entitlement benefits, requiring the provision of health insurance potentially at no cost for up to 11 months of the year. Florida has declined to expand many entitlement programs because doing so is not in the interest of the State and its residents, as it would put a tremendous strain on the provision of services, to the detriment of everyone. *Cf.* Brian Blase & Drew Gonshorowski, Paragon Health Inst., *Resisting the Wave of Medicaid Expansion: Why Florida Is Right* (Dec. 2023), https://perma.cc/J7R3-79MR.

10.    CMS cannot use the Final Rule as a backdoor to expanding entitlements. In so doing, CMS actually undermines the ability of Florida and other States to expand CHIP to even more children in need. The Final Rule should be declared unlawful, set aside, and enjoined.

**PARTIES**

11.    Plaintiff Florida is a sovereign State with the authority and responsibility to protect its sovereign interests, its public fisc, and the health, safety, and welfare of its citizens.

12.    Plaintiff AHCA is an agency and arm of Florida. AHCA administers Florida CHIP under Title XXI of the Social Security Act.[2]

13.    Defendant CMS is the federal agency that oversees federal approval, oversight, and funding for CHIP.

14.    Defendant Chiquita Brooks-LaSure is the Administrator of CMS. She is sued in her official capacity.

15.    Defendant HHS is the parent federal agency of CMS.

16.    Defendant Xavier Becerra is the Secretary of HHS. He is sued in his official capacity.

**LEGAL STANDARD**

17.    The Administrative Procedure Act ("APA") "embodies [a] basic presumption of judicial review," *Abbott Lab'ys. v. Gardner*, 387 U.S. 136, 140 (1967), and requires courts to "hold unlawful and set aside" any agency action that is "arbitrary, capricious, … or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory … authority," *id.* § 706(2)(C).

---

[2] Plaintiff Florida and Plaintiff AHCA are referred to collectively as "Florida" throughout this Complaint.

18.    "Agencies have only those powers given to them by Congress." *West Virginia v. EPA*, 597 U.S. 697, 723 (2022). Thus, "as mere creatures of statute," agencies "must point to explicit Congressional authority justifying their decisions." *Clean Water Action v. EPA*, 936 F.3d 308, 313 n.10 (5th Cir. 2019). Agencies are constrained to implementing the "best reading" of any statute they administer. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024).

19.    Agency action also must be "the product of reasoned decisionmaking," which requires "consideration of [all] relevant factors." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 42, 52 (1983). Agencies "must 'give interested persons an opportunity to participate in the rule making,'" and "must consider and respond to significant comments received during the period for public comment." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (quoting 5 U.S.C. § 553(c)).

## JURISDICTION AND VENUE

20.    This Court has jurisdiction under 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 1331, 1346, and 2201.

21.    Under the APA, any "final agency action" is subject to judicial review, and the United States has waived sovereign immunity so long as the plaintiff seeks only non-monetary relief. 5 U.S.C. §§ 702, 704; *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1555 (11th Cir. 1985).

22.     Agency action is "final" when it "mark[s] the consummation of the agency's decisionmaking process," and determines "rights or obligations" or produces "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (cleaned up). "[T]here can be no question that [the Final Rule]—promulgated in a formal manner after notice and evaluation of submitted comments—is a 'final agency action' under … the Administrative Procedure Act." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 162 (1967). And "the issue … presents a purely legal question: whether the regulation is totally beyond the agency's power under the statute, the type of legal issue that courts have occasionally dealt with without requiring a specific attempt at enforcement, or exhaustion of administrative remedies." *Id.* at 163 (citations omitted).

23.     Venue is proper under 28 U.S.C. § 1391(e)(1) because an agency of the United States is a Defendant, and Florida is a resident of every judicial district and division in its sovereign territory, including this judicial district and division. *See Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443, at *2 (N.D. Fla. Jan. 18, 2022) ("It is well established that a state 'resides at every point within its boundaries.'" (cleaned up) (quoting *Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892))); *see also California v. Azar*, 911 F.3d 558, 569–70 (9th Cir. 2018) ("[A] state with multiple judicial districts 'resides' in every district within its borders."); *Utah v. Walsh*, No. 2:23-CV-016-Z, 2023 WL 2663256, at *3 (N.D. Tex. Mar. 28, 2023) ("Texas resides everywhere in Texas."); *Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d

1301, 1329 (N.D. Ala. 2005) ("[C]ommon sense dictates that a state resides throughout its sovereign borders.").

## FACTUAL BACKGROUND

*Federal CHIP*

24.     In 1997, Congress established CHIP under Title XXI of the Social Security Act to offer health insurance to "targeted low-income children" and certain other uninsured individuals who do not qualify for health insurance under Medicaid. 42 U.S.C. §§ 1397aa–1397bb. CHIP is designed as a cooperative effort between States and the federal government. Each State develops and administers its own CHIP plan, and the federal government provides supplemental funding to help defray program costs. *See id.* §§ 1397aa–1397mm.

25.     To obtain federal reimbursement for CHIP expenditures, a state CHIP plan must generally comply with federal standards. *Id.* § 1397ff(a), (d)(2). States submit their CHIP plans to CMS for approval and must operate their programs consistent with an approved plan. *Id.* § 1397ff(a)(1), (d)(1).

26.     States have considerable flexibility to implement CHIP plans that best serve their residents. For example, Title XXI permits States to select the standards they use "to determine the eligibility of targeted low-income children," including standards "relating to the geographic areas to be served by the plan, age, income and resources ... , residency, disability status (so long as any standard relating to such status does not restrict eligibility), access to or coverage under other health coverage,

and duration of eligibility." *Id.* § 1397bb(b)(1)(A); 42 C.F.R. § 457.320(a). States may not, however, impose eligibility standards that favor children with higher family incomes, "deny eligibility based on … a preexisting medical condition," or "apply a waiting period" for certain coverage. 42 U.S.C. § 1397bb(b)(1)(B); 42 C.F.R. § 457.320(b).

27.    A child determined to be *eligible* for benefits may then *enroll* to obtain health insurance coverage under the state CHIP plan. *See, e.g.*, 42 U.S.C. § 1397cc(e)(3)(C)(i) (discussing "individuals *enrolled* under the plan" (emphasis added)). To qualify for federal funding, state CHIP plans must provide participants with certain baseline insurance coverage, including coverage for basic health services, mental health services, and dental services. *Id.* § 1397cc(a), (c).

28.    Title XXI allows States to design their CHIP plans to require cost-sharing by participants, including by charging "premiums, deductibles, [and] coinsurance" for certain covered health services. *Id.* § 1397cc(e)(1)(A). Federal regulations detail state obligations related to "Enrollee Financial Responsibilities," including disclosure requirements and limitations on charges. 42 C.F.R. pt. 457, subpt. E. And Congress has expressly stated that "[n]othing in [Title XXI] shall be construed as providing an individual with an entitlement to child health assistance under a State child health plan." 42 U.S.C. § 1397bb(5).

29.    Once enrolled in a state CHIP plan, participants are entitled to certain "[d]isenrollment protections," including receiving "reasonable notice of and an

opportunity to pay past due" amounts and "an opportunity for an impartial review to address disenrollment," and prohibiting States from requiring payment of "past due premiums … as a condition of … reenrollment." 42 C.F.R. § 457.570; *see* 42 U.S.C. § 1397cc(e)(C)(ii). When a State elects to require cost-sharing, Congress has allowed the State to "terminat[e]" an enrollee's "coverage" for nonpayment after a 30-day grace period. *Id.* § 1397cc(e)(3)(C)(i).

30.    Through a 2016 rule finalized after notice-and-comment procedures, CMS allowed States the option of providing CHIP participants with a period of "continuous eligibility." 42 C.F.R. § 457.342; *see* 81 Fed. Reg. 86382 (Nov. 30, 2016); 78 Fed. Reg. 4594 (proposed Jan. 22, 2013). Congress had offered States a similar continuous eligibility "option" for Medicaid by statute. *See* 42 U.S.C. § 1396a(e)(12).

31.    CMS regulations specified that if a State offers continuous eligibility as part of CHIP or Medicaid, "[a] child's *eligibility* may not be terminated during a continuous eligibility period, regardless of any changes in circumstances, unless:

(1)  The child attains the maximum age … ;

(2)  The child or child's representative requests a voluntary termination of eligibility;

(3)  The child ceases to be a resident of the State;

(4)  The agency determines that eligibility was erroneously granted at the most recent determination, redetermination or renewal of eligibility because of agency error or fraud, abuse, or perjury attributed to the child or the child's representative; or

(5)  The child dies."

42 C.F.R. § 435.926(d) (2024) (emphasis added); *see id.* § 457.342(b) (2024).

11

32.    CMS further provided that a CHIP participant "may be terminated during the continuous eligibility period for failure to pay required premiums or enrollment fees required under the State plan, subject to the *disenrollment* protections afforded under [42 U.S.C. § 1397cc(e)(3)(C)] (related to premium grace periods) and [42 C.F.R.] § 457.570 (related to disenrollment protections)." *Id.* § 457.342(b) (2024) (emphasis added). This provision gave effect to the statutory allowance for termination of coverage for nonpayment of premiums. 42 U.S.C. § 1397cc(e)(3)(C).

33.    States can amend their CHIP plans at any time. *See id.* § 1397ff(b)(1). Plan amendments must be submitted to CMS for approval, and CMS is required to "promptly review … plan amendments … to determine if they substantially comply with" federal standards. *Id.* § 1397ff(c)(1); *see* 42 C.F.R. § 457.150. If CMS concludes the plan amendments do not "substantially comply," CMS "withholds payments to the State, in whole or in part," after "giving the State notice" and "a reasonable opportunity for correction." *Id.* § 457.204(a); *see* 42 U.S.C. § 1397ff(d)(2).

34.    States must submit annual reports to CMS on the operation of their CHIP plans. 42 C.F.R. § 457.750. "CMS reviews State and local administration of the CHIP plan through analysis of the State's policies and procedures, on-site reviews of selected aspects of agency operation, and examination of samples of individual case records." *Id.* § 457.200. A State found to be operating its program in a way that does not comply with its approved plan or with federal standards is subject to withholding of federal funds. *Id.* § 457.204(a)(2).

*Florida CHIP*

35.     In 1990, before Congress established CHIP, the Florida Legislature created the Florida Healthy Kids Corporation as a public-private partnership to provide access to subsidized health insurance for uninsured school-age children. Ex.1, Robert F. Coulam & Jennifer Levinson, *Florida Healthy Kids Demonstration: Final Report* 1 (May 1, 1995) ("Demonstration Report").

36.     The program began in Volusia County as a demonstration project under the Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 6407, 103 Stat. 2106, 2266 (1989), which required States to charge premiums to participating families with incomes between 100% and 185% of the federal poverty level ("FPL"), *id.* § 6407(c)(2), 103 Stat. at 2266. By 1995, the federal funding had ended, but Florida continued its efforts and the program expanded to additional counties, funded by state, local, and private sources. Ex.1, Demonstration Report at 1–2, 62–66.

37.     When Congress established CHIP in 1997, it expressly grandfathered the Florida program, permitting the State to continue its program as part of CHIP and giving the State discretion to modify its program within broad limits. 42 U.S.C. § 1397cc(a)(3), (d)(1); 42 C.F.R. § 457.440.

38.     Florida subsequently transferred administration of its program to "Florida KidCare," an umbrella program that oversees both Florida Medicaid and CHIP.

39.     Generally, Florida Medicaid offers no-cost health insurance to children

under age 1 whose household incomes are up to 206% of the FPL, children ages 1 through 5 whose household incomes are up to 140% of the FPL, and children ages 6 through 18 whose household incomes are up to 133% of the FPL.[3] Florida CHIP offers subsidized health insurance coverage to children ages 1 through 18 who are not eligible for Medicaid and whose household incomes are up to 210% of the FPL. *Florida KidCare Program*, *supra*, at 5, 23. As of October 2024, Florida CHIP provided subsidized health insurance coverage to more than 150,000 Florida children. Florida KidCare, *Expenditure Social Services Estimating Conference*, *supra*, at 9.[4]

40.    Children must also meet other criteria to be eligible for Florida CHIP. For example, the child must be a U.S. citizen or qualified alien, a Florida resident, and uninsured at the time of application. *Florida KidCare Program*, *supra*, at 80–84, 86.

41.    If a child is determined to meet the eligibility criteria for participation in Florida CHIP, the child's family is notified and invited to enroll the child in the program.

42.    Florida CHIP has always required cost-sharing. Families who elect to enroll at least one child in the program are required to pay a modest monthly premium to obtain insurance coverage, at a rate that scales with family income. Families with incomes up to 158% of the FPL pay a monthly premium of $15 per family, and families

---

[3] Income thresholds are specified in terms of modified adjusted gross income ("MAGI"). 42 U.S.C. § 1396a(e)(14).

[4] Families that do not qualify for coverage under CHIP or Medicaid are also eligible to purchase health insurance for children through Florida KidCare, but they are required to pay the full premium cost. *Florida KidCare Program*, *supra*, at 5, 23, 177.

14

with incomes above 158% and up to 210% of the FPL pay a monthly premium of $20 per family. The monthly premiums are the same regardless of the number of children in the family enrolled. *Florida KidCare Program*, *supra*, at 22–23, 176–77.

43.　Premium payments help offset the costs of Florida CHIP. In fiscal year 2024–2025, Florida expects to collect approximately $26 million in premium payments for benefits provided to CHIP participants. Florida KidCare, *Expenditure Social Services Estimating Conference*, *supra*, at 26, 45, 93.

44.　The Florida Constitution requires balanced annual budgets. Fla. Const. art. III, § 19(a); *id.* art. VII, § 1(d). Premium payments play an important role in achieving the requirement and maintaining the long-term stability of Florida CHIP.

45.　Requiring participants to make modest contributions to the cost of health insurance also reflects a conscious policy choice by the Florida Legislature, which concluded that Florida residents are best-served when those eligible for state-subsidized healthcare retain a measure of accountability for, and investment in, the benefits they receive. Florida CHIP is a personal responsibility program, intended to bridge the gap between families with the lowest incomes who receive no-cost health insurance through Medicaid, and families with higher incomes who must obtain insurance on their own. *See* Fla. Stat. § 409.812 (Florida KidCare provides "health benefits coverage options from which families may select coverage and through which families may contribute financially to the health care of their children"); *id.* § 409.813 ("[C]overage under the Florida Kidcare program is not an entitlement."); Staff of

15

Florida H.R. Health Care Servs. Comm., *Review of the Implementation of the Florida KidCare Act* 7–8 (Sept. 1999), https://perma.cc/A8TU-9HJM.

46.     Since January 2005, Florida CHIP has provided 12 months of continuous eligibility for participants.[5] During the continuous eligibility period, a child remains eligible for subsidized health insurance regardless of changes in the child's circumstances (unless the child reaches age 19 or moves out of state). This means that even if the child's household income increases above 210% of the FPL during the relevant period, the child retains access to health insurance through Florida CHIP with no change in monthly premiums for 12 months, measured from the first month of coverage or the month following the date the participant completed renewal. *Florida KidCare Program, supra*, at 83, 91–92.

47.     Payment of monthly premiums is required to maintain enrollment in— and thus coverage under—Florida CHIP, but not to maintain underlying eligibility. A child whose family does not pay the monthly premium will be disenrolled from insurance coverage after a 30-day grace period regardless of eligibility. The child can, however, re-enroll without going through a new eligibility application and determination. *Id.* at 97–98. Florida has required disenrollment for nonpayment of premiums since it started offering subsidized health insurance to children in 1991.

---

[5] From 1998 to 2005, Florida CHIP provided six months of continuous eligibility. *Florida KidCare Program, supra*, at 83, 91–92.

Ex.1, Demonstration Report at 25; *cf.* Omnibus Budget Reconciliation Act of 1989, § 6407, 103 Stat. at 2266. It is required by state law. *See* Fla. Stat. 624.91(5)(b)(9).

48.     CHIP premiums are due on the first day of the month prior to the month of coverage. *Florida KidCare Program*, *supra*, at 178. Disenrollments from Florida CHIP occur monthly and become effective on the first day of the month after the unpaid premium was due. For example, disenrollments are January 1, 2025, for participants who have not paid premiums that were due December 1, 2024.

49.     In June 2023, Governor Ron DeSantis signed into law Florida H.B. 121, which makes Florida children with household incomes up to 300% of the FPL eligible for subsidized insurance through Florida CHIP. *See* H.B. 121, 2023 Leg. § 1. The increased income limit will make subsidized health insurance available to tens-of-thousands of additional Florida children in its first full year of operation, alone. *Florida H.R. Staff Final Bill Analysis: H.B. 121*, *supra*, at 5. The expansion will be funded partially through state funds, with the remaining costs covered through the collection of premium payments and matching federal funds. *Id.* at 6–7.

50.     Under the current proposal for Florida's expanded program, premiums for those already eligible for the program would adjust slightly. Families with incomes between 133% and 175% of the FPL would pay $17 per month, and families with incomes between 175% and 200% of the FPL would pay $30 per month. Newly eligible families with higher incomes would pay premiums ranging from $60 to $195 per month. *See* AHCA, *New 5-Year Section 1115 Demonstration Request* 3 (Jan. 23, 2024),

https://perma.cc/QB4A-5VFR. If their incomes decrease, families would continue to become eligible for tiers with lower premiums.

51.    The Florida Legislature projected that annual premium collections would immediately jump to over $37 million, and could more than double once the expansion is in full effect, which would help offset increased program costs. *See Florida H.R. Staff Final Bill Analysis: H.B. 121*, *supra*, at 7.

*2023 CAA*

52.    In section 5112 of the 2023 CAA, Congress amended the Social Security Act to make continuous eligibility mandatory for both Medicaid and CHIP. Pub. L. No. 117-328, § 5112, 136 Stat. at 5940.

53.    Specifically, Congress amended section 1902(e)(12) of the Social Security Act, 42 U.S.C. § 1396a(e)(12), applicable to Medicaid, to read:

> The State plan (or waiver of such State plan) shall provide that an individual who is under the age of 19 and who is determined to be eligible for benefits under a State plan (or waiver of such plan) approved under this title under subsection (a)(10)(A) shall remain eligible for such benefits until the earlier of—
>
> > (A) the end of the 12-month period beginning on the date of such determination;
> >
> > (B) the time that such individual attains the age of 19; or
> >
> > (C) the date that such individual ceases to be a resident of such State.

2023 CAA, § 5112(a), 136 Stat. at 5940.

54.    Congress then amended section 2107(e)(1) of the Social Security Act, 42 U.S.C. § 1397gg(e)(1), to provide that the Medicaid mandatory continuous eligibility

provision also applies to state CHIP plans. 2023 CAA, § 5112(b), 136 Stat. at 5940 (adding 42 U.S.C. § 1397gg(e)(1)(K)).[6]

55.    The 2023 CAA addresses only whether a child is "eligible" for CHIP benefits. It says nothing about *enrollment* in—or *coverage* under—a state CHIP plan.

56.    The 2023 CAA also did not modify 42 U.S.C. § 1397bb(5), which provides that "[n]othing in Title XXI shall be construed as providing … an entitlement to child health assistance" under CHIP. Nor did it modify any of the statutory or regulatory provisions allowing States to require participant cost-sharing under CHIP. *See, e.g.*, 42 U.S.C. § 1397cc(e); 42 C.F.R. pt. 457, subpt. E. Nor did it modify Congress's allowance that States may "terminat[e]" an "individual's coverage" for "failure to make a premium payment" after a 30-day grace period, 42 U.S.C. § 1397cc(e)(3)(C), or the regulation expressly permitting termination of CHIP enrollment "during the continuous eligibility period for failure to pay required premiums or enrollment fees," 42 C.F.R. § 457.342(b) (2024).

57.    Congress has previously considered bills that would provide for continuous enrollment in—and thus coverage under—a state CHIP plan. *See* Stabilize Medicaid and CHIP Coverage Act of 2021, S. 646, 117th Cong. (2021); Stabilize Medicaid and CHIP Coverage Act, H.R. 1738, 117th Cong. (2021). Those bills

---

[6] The 2023 CAA also provides that "a targeted low-income child enrolled under the State child health plan or waiver may be transferred to the Medicaid program … for the remaining duration of the 12-month continuous eligibility period, if the child becomes eligible for full [Medicaid] benefits … during such period." 2023 CAA, § 5112(b), 136 Stat. at 5940.

contained express language requiring that "an individual who is determined to be eligible for benefits … shall remain eligible *and enrolled* for such benefits" for the duration of the specified period. S. 646 § 3(b)(1) (emphasis added); H.R. 1738 § 2(b)(1) (same). But Congress passed section 5112 of the 2023 CAA instead, which includes no reference to CHIP enrollment or coverage.

*September 29, 2023 SHO Letter*

58.    On September 29, 2023, CMS issued a State Health Official ("SHO") letter "to provide states with guidance on implementing" the new continuous eligibility requirement in the 2023 CAA. *See* CMS, SHO #23-004, *Section 5112 Requirement for All States to Provide Continuous Eligibility to Children in Medicaid and CHIP Under the Consolidated Appropriations Act, 2023*, at 1 (Sept. 29, 2023) ("SHO Letter"), https://perma.cc/532Z-GQHZ. The SHO Letter conflated "eligibility" and "enrollment," incorrectly stating that continuous eligibility "provides *coverage* to children in … CHIP for a full 12-month period regardless of changes in circumstances." *Id.* at 2 (emphasis added). It then purported to prohibit *disenrollment* during the continuous eligibility period. *See, e.g., id.* at 8 ("States may *not* terminate coverage … during a [continuous eligibility] period …. Rather, the child must remain eligible for coverage through the end of the 12-month period[.]").

59.    The SHO Letter also observed that the 2023 CAA "explicitly provide[s]" only two "exception[s]" to continuous eligibility—for children who "[r]each age 19" or "[c]ease to be state residents." *Id.* at 4. But it continued that States "will be expected

20

to" continue terminating eligibility for three other reasons expressed in CHIP and Medicaid regulations—when eligibility is voluntarily terminated, when the agency determines eligibility was erroneously granted, or when the child dies. *Id.* at 4–5 (citing 42 C.F.R. §§ 435.926(d), 457.342(b) (2024)). According to the SHO Letter, these five circumstances would be the only situations for a State to terminate CHIP eligibility during the continuous eligibility period. *Id.* at 7, 8. The SHO Letter did not discuss termination of coverage for nonpayment of premiums, noting instead that CMS was "still assessing how non-payment of premiums intersects with [continuing eligibility] under the CAA" and indicating CMS's "inten[t] to issue separate guidance on [the] topic." *Id.* at 4 n.14.

60.     The SHO Letter directed that States with nonconforming CHIP plans "must" submit plan amendments "no later than the end of the state fiscal year in which January 1, 2024 falls." *Id.* at 14.

**October 27, 2023 FAQs**

61.     On October 27, 2023, CMS issued a document labeled "Frequently Asked Questions" about continuous eligibility under the 2023 CAA. CMS, *Mandatory Continuous Eligibility for Children in Medicaid and CHIP: Frequently Asked Questions* ("FAQs"), https://perma.cc/PX4L-8Z5W. Despite its title, the FAQs tried to impose new substantive obligations on States operating CHIP plans and effectively amend then-existing CMS regulations.

62.    The FAQs instructed that beginning January 1, 2024, States could not "terminate CHIP *coverage* during a continuous eligibility … period due to nonpayment of premiums." *Id.* at 1 (emphasis added). As in the SHO Letter, the FAQs mistakenly equated *eligibility* for CHIP benefits with *coverage* under—and thus *enrollment* in—a state CHIP plan.

63.    The FAQs further reasoned that because "[t]here is not an exception to [continuous eligibility] for nonpayment of premiums" under the 2023 CAA, "the existing regulatory option at 42 CFR § 457.342(b) for states operating a separate CHIP to consider non-payment of premiums as an exception to [continuous eligibility] will end on December 31, 2023." *Id.* "States that have already adopted [continuous eligibility] for children and treat nonpayment of premiums as an exception to [continuous eligibility] in CHIP will need to submit a CHIP [state plan amendment] as outlined in … [the] SHO Letter." *Id.* And the FAQs continued that States must "absorb the costs of unpaid premiums," as those costs are not eligible for federal reimbursement. *Id.* at 2.

64.    The FAQs, however, insisted that five regulatory reasons for terminating eligibility remained operable. *See* 42 C.F.R. §§ 435.926(d), 457.342(b) (2024). Two of those—reaching age 19 or moving out-of-state—are expressly included in the 2023 CAA. FAQs, *supra*, at 1. CMS justified retaining the other three—when the child dies,

22

"requests disenrollment,"[7] or eligibility was erroneously granted—because they "do not undermine the [continuous eligibility] mandate … and are important to protecting program integrity." *Id.*

65.    The FAQs did not explain how allowing termination of *coverage*—not termination of *eligibility*—based on nonpayment of premiums undermines the 2023 CAA's continuous eligibility requirement. Nor did the FAQs explain why allowing disenrollment for nonpayment of premiums was not important for program integrity.

***Roadblocks to Florida's CHIP Expansion***

66.    Also in October 2023, CMS informed Florida that it could not obtain approval to expand its CHIP plan—including the new premium tiers—through a conventional plan amendment. Florida would instead need to apply for a waiver under section 1115 of the Social Security Act, 42 U.S.C. § 1315(a). CMS continued that Florida would also need to amend Florida CHIP to conform with the SHO Letter and FAQs. CMS indicated that it would not approve Florida's proposed expansion without accompanying modifications to Florida CHIP's continuous eligibility provisions, namely, the provisions that allow the State to disenroll an eligible child for nonpayment of premiums during the continuous eligibility period.

---

[7] While 42 C.F.R. § 435.926(d)(2) permits termination of "eligibility" during the continuous eligibility period whenever "[t]he child or child's representative requests a voluntary *termination of eligibility*" (emphasis added), the FAQs permit States to "terminate *coverage*" whenever "the child or their representative requests *disenrollment*," FAQs, *supra*, at 1 (emphases added), again conflating "eligibility" with "enrollment" and "coverage."

67.     On January 23, 2024, Florida posted for public review its application for a section 1115 waiver for the expanded Florida CHIP plan. *See New 5-Year Section 1115 Demonstration Request*, *supra*.

**Secretary Becerra's December 18, 2023 Letter to Governor DeSantis**

68.     On December 18, 2023, Secretary Becerra sent a letter to Governor DeSantis, discussing trends in Medicaid and CHIP enrollment and "urg[ing]" Governor DeSantis "to ensure that no child in [Florida] who still meets eligibility criteria for Medicaid or CHIP loses their health coverage due to 'red tape' or other avoidable reasons." Letter from Xavier Becerra, HHS Sec'y, to Ron DeSantis, Florida Governor, at 1 (Dec. 18, 2023) ("Becerra Letter"), https://perma.cc/LK8X-6XF4.

69.     Secretary Becerra's letter listed several recommended "proactive actions to prevent eligible children from losing Medicaid and CHIP," and closed with a suggestion to "[e]xpand Medicaid." *Id.* at 1–2.

70.     The letter also included the warning that "HHS takes its oversight and monitoring role … extremely seriously and will not hesitate to take action to ensure states' compliance with federal Medicaid requirements." *Id.* at 1.

**Florida Sues to Protect the Integrity and Sustainability of Florida CHIP**

71.     On February 1, 2024, Florida sued Defendants, arguing the FAQs were contrary to law, in excess of CMS's authority, and arbitrary and capricious under the APA. *See Florida v. CMS*, No. 8:24-cv-317, 2024 WL 2803298, at *3 (M.D. Fla. May 31, 2024). Florida also argued that the FAQs amended CMS regulations without

providing for notice and comment, in violation of the procedural requirements of the APA. *Id.*

72.　Florida simultaneously sought a preliminary injunction because the FAQs would require Florida to administer its CHIP plan without the cost-sharing that Florida deems critical to its program and that has been expressly allowed by Congress. *Id.* Florida anticipated that compliance with the FAQs would cost the State approximately $1 million each month to provide benefits to CHIP participants who should have been disenrolled. Motion for Preliminary Injunction at 23, *Florida v. CMS*, No. 8:24-cv-317.

73.　Florida also faced recurring harm each month by being forced to choose between following its own laws requiring disenrollment for nonpayment of premiums or the FAQs. *Florida v. Nelson*, 576 F. Supp. 3d 1017, 1039 (M.D. Fla. 2021) ("a state's 'inability to enforce [its] duly enacted plans clearly inflicts irreparable harm on the State'" (quoting *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018))); *see also Texas v. Becerra*, 577 F. Supp. 3d 527, 557 (N.D. Tex. 2021) ("irreparable harm exists when a federal regulation prevents a state from enforcing its duly enacted laws"). This forced choice "demonstrate[d] a likely irreparable harm to sovereign interests." *Nelson*, 576 F. Supp. 3d at 1040.

74.　On May 31, 2024, the district court dismissed the case after concluding review provisions of the Social Security Act impliedly precluded its jurisdiction under

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). *See Florida v. CMS*, 2024 WL 2803298, at *6. Florida timely appealed. *Florida v. CMS*, No. 24-12217 (11th Cir.).

***CMS Initiates Rulemaking to Codify the FAQs***

75.     While Florida's appeal was pending, CMS issued a Proposed Rule to amend its regulations and codify the requirements in the FAQs. *Medicaid and CHIP Continuous Eligibility*, 89 Fed. Reg. 59186, 59487–88 (proposed July 22, 2024). In the Proposed Rule, CMS observed that the 2023 CAA "amended section 1902(e)(12) of the [Social Security] Act to make the previously optional [continuous eligibility] policy a requirement under the state plan or waiver of the state plan for children enrolled in Medicaid." *Id.* at 59487. Although the 2023 CAA included only two exceptions to Medicaid continuous eligibility, CMS concluded that the additional "three exceptions" to Medicaid continuous eligibility in 42 C.F.R. § 435.926(d) "were unaffected by the" 2023 CAA and "would not be altered by the proposed rule." *Id.* CMS cited its explanation in the SHO Letter. *Id.*

76.     CMS also argued that the 2023 CAA requires that continuous eligibility "'shall' apply to CHIP 'in the same manner' as it does to Medicaid." *Id.* at 59488. Because Medicaid regulations "never contained an exception permitting States to terminate coverage for failure to pay premiums," CMS reasoned that "the CHIP [continuous eligibility] period also could not contain this exception." *Id.* Citing the 2023 CAA and its "authority in section 2101(a) of the [Social Security] Act [42 U.S.C. § 1397aa(a)] to enable States to provide child health assistance in an effective and

26

efficient manner," CMS "propose[d] to remove the option in [42 C.F.R.] § 457.342(b) to disenroll children from separate CHIP coverage for failure to pay required fees during a continuous eligibility period." *Id.*

77. AHCA filed a comment on the Proposed Rule to explain that the 2023 CAA mandated continuous *eligibility*, while the Proposed Rule would impose a different, continuous *enrollment* requirement. AHCA, CMS-2024-0199-2488, Comment Letter on Proposed Rule on Medicaid and CHIP Continuous Eligibility, at 7 (Sept. 9, 2024) ("AHCA Comment"), *available at* https://www.regulations.gov/comment/CMS-2024-0199-2488. Observing that Congress has "consistently distinguished eligibility and enrollment in the Social Security Act," AHCA argued that if "Congress intended to require continuous enrollment, it would have said so." *Id.* at 8.

78. AHCA continued that the Proposed Rule "cannot be reconciled with Title XXI" because "Congress has been unequivocal that CHIP is not an 'entitlement' program," and "that is exactly what the proposed rule creates." *Id.* at 6. AHCA observed that the Proposed Rule is also "out of harmony" with 42 U.S.C. § 1397cc(e)(3)(C), which expressly allows "termination of [CHIP] coverage for failure to make a premium payment." *Id.* (cleaned up).

79. AHCA then emphasized that CMS's suggestion that a State can disenroll "children with an unpaid premium balance at the end of their 12-month [continuous eligibility] period ... rings hollow." *Id.* at 8 (cleaned up). Because States must renew

participant eligibility annually, 42 C.F.R. §§ 435.916, 457.343, and cannot "require the collection of past due premiums … as a condition of eligibility for reenrollment," *id.* § 457.570(c)(2), States must immediately re-enroll a participant with past-due premiums once a single month's premium is paid, at which point "the process repeats." AHCA Comment, *supra*, at 6, 8–9.

80.    AHCA disputed CMS's assertion that because continuous eligibility must apply "in the same manner" to CHIP as it does to Medicaid, it requires continuous enrollment. *Id.* at 9. Eligibility has different consequences in Medicaid and CHIP because "individuals eligible for Medicaid are entitled to state-provided health insurance coverage, while individuals eligible for CHIP have the opportunity to enroll in a state-subsidized health plan." *Id.* (citations omitted). Applying continuous eligibility to CHIP "'in the same manner' means only that States cannot reconsider a child's eligibility for CHIP for an entire year." *Id.* (quoting 42 U.S.C. § 1397gg(e)). It does not guarantee enrollment or the receipt of benefits.

81.    AHCA further noted that CMS applied its logic inconsistently. *Id.* For example, Medicaid continuous eligibility cannot be contingent on payment of enrollment fees or a first month's premium, *see* 42 C.F.R. § 435.930(b), but the Proposed Rule would nonetheless permit both for CHIP, 89 Fed. Reg. at 59488 ("States would maintain the option to require payment of an enrollment fee prior to initial enrollment. States will also continue to have the option to require payment of the first month's premium prior to enrolling a child.").

82.     AHCA also argued that section 2101(a) of the Social Security Act did not provide CMS authority for the Proposed Rule. AHCA Comment, *supra*, at 7. That provision explains that the "purpose of [Title XXI] is to provide funds to States to enable them to initiate and expand the provision of child health assistance to uninsured, low-income children in an effective and efficient manner." 42 U.S.C. § 1397aa(a). "But statements of purpose do not provide a colorable basis for agency action, especially when the action would be inconsistent with (or in violation of) other provisions of the same statute." AHCA Comment, *supra*, at 6 (citing *District of Columbia v. Heller*, 554 U.S. 570, 578 (2008)).

83.     Finally, AHCA added that the Proposed Rule was both "[l]ogically [i]nconsistent" because "the same justification for its preferred exceptions—that they are important to maintain program integrity—applies equally to allowing disenrollment for nonpayment of premiums," and inadequately explained because CMS did not articulate "why it allows States to require enrollment fees, the first month's premium, and co-payments" from CHIP participants "when that same cost-sharing is not allowed for children receiving Medicaid benefits." *Id.* at 11 (cleaned up).

**The Final Rule**

84.     CMS published the Final Rule in the Federal Register on November 27, 2024, effective January 1, 2025. 89 Fed. Reg. at 94462–67. Consistent with the Proposed Rule, the Final Rule amended 42 C.F.R. § 457.342 to require that a "State *must* provide continuous eligibility for children under a separate CHIP," and rescinded

42 C.F.R. § 457.342(b) (2024), which acknowledged a State's ability to disenroll CHIP participants for premium nonpayment during the continuous eligibility period. 89 Fed. Reg. at 94591. The Final Rule recognized that the new prohibition on disenrollment "may require … changes in State laws" and specified that "all States will be required to submit a CHIP State plan amendment (SPA) to demonstrate compliance with the" disenrollment prohibition. *Id.* at 94464, 94467.

85.    CMS's justification for the Final Rule largely followed the Proposed Rule. According to CMS, the 2023 CAA "compels CMS to remove nonpayment of premiums as an exception to continuous eligibility" because "continuous eligibility under Medicaid must apply 'in the same manner' with respect to CHIP coverage." *Id.* at 94465. CMS claimed that "unnecessary exceptions to continuous eligibility that are not provided for by statute, such as the exception for nonpayment of premiums, must be eliminated." *Id.*

86.    CMS argued that the Final Rule "does not render CHIP an entitlement program" because "States are not prohibited from charging and pursuing the collection of past-due premiums or from requiring an initial premium or enrollment fee to be paid prior to an individual enrolling in coverage." *Id.* at 94466. CMS reasoned that because Medicaid's mandate to promptly furnish benefits to all eligible individuals and prohibition on requiring premium prepayment do not apply to CHIP, States could continue to collect CHIP enrollment fees and first month's premiums. *Id.*

87.    The Final Rule did not address the long-standing distinction between *eligibility* for CHIP benefits and *enrollment* in a CHIP plan, the different consequences of eligibility under CHIP and Medicaid, or AHCA's comment that the best reading of the 2023 CAA is that applying continuous eligibility to CHIP "'in the same manner' means only that States cannot reconsider a child's eligibility for CHIP for an entire year." AHCA Comment, *supra*, at 9. And, despite including an example of how a participant can purportedly be "disenrolled for nonpayment at the end of the continuous eligibility period after nonpayment," 89 Fed. Reg. at 94466, CMS did not confront AHCA's criticism that such disenrollment "rings hollow, because States must immediately (perhaps preemptively) re-enroll" the participant so that the "process repeats." AHCA Comment, *supra*, at 6, 8; *see* 42 C.F.R. § 457.570(c).

88.    The Final Rule did not mention section 2101(a) of the Social Security Act or the FAQs.

### *CMS Conditions Approval of Florida's CHIP Expansion on Continuous Eligibility*

89.    On December 2, 2024, CMS notified Florida that it had approved its expanded CHIP plan, contingent on Florida agreeing not to disenroll CHIP participants (including "the expansion population") for nonpayment of premiums during periods of continuous eligibility. Letter from Chiquita Brooks, CMS Administrator, to Brian Meyer, AHCA Deputy Secretary for Medicaid, at 2 (Dec. 2, 2024), https://perma.cc/4MER-28L4. CMS cited the Final Rule and reiterated its

position that continuous enrollment is required by the 2023 CAA, and even if not, "CMS would impose the same condition … as a matter of policy." *Id.* at 2–3 & n.3.

***Florida Moves to Dismiss Its Prior Appeal and Initiate This Lawsuit***

90.     In briefing to the Eleventh Circuit regarding Florida's challenge to the FAQs, CMS represented that the Final Rule "supersedes the FAQs." CMS Response Brief at 16, *Florida v. CMS*, No. 24-12217 (11th Cir. Nov. 25, 2024). The parties then jointly moved to dismiss the appeal and vacate the district court decision. *Florida v. CMS*, No. 24-12217 (11th Cir. Dec. 13, 2024).

91.     Florida now challenges the Final Rule. Like the FAQs before it, the Final Rule amounts to a backdoor expansion of no-cost health insurance that was never authorized by Congress. Although entitlement programs may be the Biden Administration's preferred policy, *see, e.g.*, Becerra Letter, *supra*, at 2, Congress disagrees, *see* 42 U.S.C. § 1397bb(b)(5) ("Nothing in [Title XXI] shall be construed as providing an individual with an entitlement to child health assistance under a State child health plan.").

92.     Florida disagrees, too. Fla. Stat. § 409.813 ("coverage under the Florida KidCare program is not an entitlement"); *see also id.* § 409.812. And under Title XXI, it is Florida's preferred policy that matters. *See, e.g.*, 42 U.S.C. § 1397gg(a) (permitting States to "identify specific strategic objectives" and "performance goals" for their CHIP plans); *id.* § 1397ff(d) (providing for "withholding of funds" only "in the case of substantial noncompliance" with "the requirements of" Title XXI).

32

93.    Florida's approach is authorized by Congress. Under Title XXI, Congress has recognized that States may "impos[e]" "charges" on CHIP participants for health insurance coverage, including "premiums, deductibles, [and] coinsurance." *Id.* § 1397cc(e)(1)(A). And Congress has allowed States to "terminat[e]" an enrollee's "coverage under the plan" for "failure to make a premium payment" after a grace period. *Id.* § 1397cc(e)(3)(C)(i).

94.    The 2023 CAA did not change this. By its plain terms, the 2023 CAA requires continuous *eligibility* for CHIP benefits, not continuous *enrollment* in a CHIP plan. The Final Rule dramatically alters the consequences of CHIP eligibility and unlawfully transforms CHIP into an entitlement program.

## CLAIMS FOR RELIEF

## COUNT ONE

### (Violation of the APA: Contrary to Law)

95.    The allegations in paragraphs 1–94 are expressly incorporated herein as if restated in full.

96.    The APA requires a reviewing court to "hold unlawful and set aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

97.    Statutes "do—in fact, must—have a single, best meaning." *Loper Bright Enters.*, 144 S. Ct. at 2266. Courts "must use every tool at their disposal to determine the best reading of the statute." *Id.* The Final Rule is not the "best reading" of the 2023 CAA.

98.    It is a "fundamental principle" that statutory construction begins by considering "the language of the statute itself, … giv[ing] effect to the plain terms of the statute." *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021) (cleaned up). The 2023 CAA provides that a child "who is determined to be eligible for benefits under" a state CHIP plan "shall remain eligible for such benefits" for 12 months, unless the child reaches age 19 or ceases to be a state resident. 2023 CAA, § 5112(a), (b), 136 Stat. at 5940; 42 U.S.C. §§ 1396a(e)(12), 1397gg(e)(1)(K).

99.    To be "eligible" means to be "qualified to participate or be chosen." *Eligible*, Merriam-Webster, https://perma.cc/GE6R-LE82 (last visited Dec. 30, 2024). A child is eligible for CHIP benefits if the child meets the relevant state-established criteria. 42 U.S.C. § 1397bb(b)(1). For Florida CHIP, eligibility criteria include having a household income that does not exceed 210% of the FPL, being a U.S. citizen or qualified alien, being a Florida resident, and being uninsured. *Florida KidCare Program*, *supra*, at 5, 80–84, 86, 177.

100.    Accordingly, the "plain and ordinary meaning" of the 2023 CAA is that once a child is determined to be eligible for CHIP benefits, a State cannot reconsider the child's eligibility for CHIP benefits for an entire year, except for the reasons specified by statute. *Chinchilla*, 987 F.3d at 1308; *see* 2023 CAA, § 5112(a), (b), 136 Stat. at 5940; 42 U.S.C. §§ 1396a(e)(12), 1397gg(e)(1)(K).

101.    The Final Rule misreads the 2023 CAA to impose a continuous *enrollment*—or, as CMS describes it, a "continuous coverage"—requirement. 89 Fed.

Reg. at 94462. The 2023 CAA says nothing about "continuous coverage" or "enrollment" in a CHIP plan. To "enroll" means to "insert, register, or enter in a list, catalog, or roll." *Enroll*, Merriam-Webster, https://perma.cc/TE86-PXCA (last visited Dec. 30, 2024). Children determined *eligible* for CHIP benefits are then offered the option to *enroll* in a CHIP plan. Once enrolled in CHIP, a child obtains health insurance *coverage*. Enrollment and coverage may require additional steps, such as paying an enrollment fee and monthly premiums. *See, e.g.*, 42 C.F.R. § 457.510. The 2023 CAA provides only for a period of uninterrupted "eligibility," not uninterrupted "enrollment" or "coverage." *See* 2023 CAA, § 5112(a), (b), 136 Stat. at 5940; 42 U.S.C. §§ 1396a(e)(12), 1397gg(e)(1)(K).

102.    The fact that continuous eligibility "shall apply to States under" CHIP "in the same manner as" it applies "to a State under" Medicaid does not change the meaning or consequences of CHIP eligibility. It simply means that in CHIP, as in Medicaid, a State cannot initiate a "re-determination of eligibility based on a change in the [participant's] circumstances during the [continuous eligibility] period." 89 Fed. Reg. at 94463.

103.    CMS's reading of the 2023 CAA is also inconsistent with statutory context. "[R]easonable statutory interpretation must account for both 'the specific context in which … language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014). Statutory context

confirms that the 2023 CAA requires only that a child remain eligible for CHIP benefits, not enrolled in a CHIP plan.

104.   Title XXI consistently distinguishes eligibility for CHIP benefits from enrollment in a CHIP plan that provides coverage. *See, e.g.*, 42 U.S.C. § 1397bb(b)(4) (discussing "barriers to the enrollment" of "eligible" individuals); *id.* § 1397hh(c)(3) ("enrollees, disenrollees, and individuals eligible for but not enrolled" in a CHIP plan); *id.* § 1397mm(a)(1) ("efforts … to increase the enrollment … of eligible children"); *id.* § 1397mm(h)(1) ("campaigns to link the eligibility and enrollment systems"); *id.* § 1397mm(h)(6) ("enrollment … strategies for eligible children").

105.   CMS regulations do the same. *See, e.g.*, 42 C.F.R. § 457.10 (discussing information in an "eligibility notice," including the potential impact of a "determination of eligibility for, or enrollment in, another insurance affordability program"); *id.* § 457.60 ("[e]ligibilty standards, enrollment caps, and disenrollment policies"); *id.* § 457.300 ("[r]egulations relat[ed] to eligibility, screening, applications and enrollment"); *id.* § 457.525(b) (cost-sharing information must be made available to "[e]nrollees, at the time of enrollment and reenrollment after a redetermination of eligibility"); *id.* § 457.570(b) (adjustment to a "child's cost-sharing category" if "the enrollee may have become eligible … for a lower level of cost sharing").

106.   Congress chose to require only continuous "eligibility" against this statutory backdrop. 2023 CAA, § 5112(a), (b), 136 Stat. at 5940; 42 U.S.C. §§ 1396a(e)(12), 1397gg(e)(1)(K). Had Congress intended to require continuous

enrollment or coverage under a state CHIP plan, it would have said so. In fact, Congress did modify certain Medicaid and CHIP "coverage" in the very next section of the 2023 CAA. *See* 2023 CAA, § 5113, 136 Stat. at 5940 ("Modifications to Postpartum *Coverage* Under Medicaid and CHIP" (emphasis added)). Congress also passed section 5112 of the 2023 CAA instead of other bills that that would have required continuous enrollment for CHIP participants. *See* S. 646 § 3(b)(1) (requiring that "an individual who is determined to be eligible for benefits … shall remain eligible *and enrolled* for such benefits" for the duration of the specified period (emphasis added)); H.R. 1738 § 2(b)(1) (same).

107.   CMS's interpretation further conflicts with a clear statement from Congress that CHIP is *not* an entitlement program. 42 U.S.C. § 1397bb(b)(5) ("Nothing in [Title XXI] shall be construed as providing an individual with an entitlement to child health assistance under a State child health plan."). The 2023 CAA did not amend this provision. But the Final Rule nonetheless creates an entitlement under CHIP, because after paying a single premium, participants are entitled to 11 months of additional coverage regardless of whether they pay subsequent premiums.

108.   The Final Rule is not any less of an entitlement because States can charge a first month's premium or enrollment fee "to be paid prior to an individual enrolling in coverage." 89 Fed. Reg. at 94466. It means only that the entitlement applies to 11 out of 12 months. Nor does it matter that States can, theoretically, pursue collection of past-due premiums. *Id.* States must re-enroll a participant regardless of past-due

amounts owed, so the participant remains entitled to 11 months of coverage each year if the participant is eligible for CHIP. At the very least, CMS's interpretation violates "one of the most basic interpretive canons" that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009).

109.    CMS's construction of the 2023 CAA also eviscerates 42 U.S.C. § 1397cc(e)(3)(C), which permits States to "terminat[e]" an enrollee's "coverage" for nonpayment after "a grace period of at least 30 days." CMS claims that under the Final Rule, States can still disenroll a participant at the end of the continuous eligibility period. 89 Fed. Reg. at 94466. But stretching a 30-day grace period to 11 months transforms that provision beyond recognition. Also, as CMS recognizes, by that time the participant may complete the renewal process, *id.*; 42 C.F.R. §§ 435.916, 457.343, and States are prohibited from conditioning reenrollment on "the collection of past due premiums or enrollment fees," 42 C.F.R. § 457.570(c)(2). Even if a State could technically disenroll a participant at the end of the continuous eligibility period, the State would have to immediately re-enroll the participant upon payment of the new first-month's premium, making 42 U.S.C. § 1397cc(e)(3)(C) "insignificant" and virtually "inoperative." *Corley*, 556 U.S. at 314.

110.    The 2023 CAA it is therefore contrary to law.

## COUNT TWO

### (Violation of the APA: Excess of Statutory Authority)

111.    The allegations in paragraphs 1–94 are expressly incorporated herein as if restated in full.

112.    The APA requires a reviewing court to "hold unlawful and set aside agency action" that is "in excess of statutory … authority." 5 U.S.C. § 706(2)(C). As explained in Count 1, the unambiguous reading of the 2023 CAA is that CHIP participants must "remain eligible for [CHIP] benefits" for an entire year, not that the child must remain enrolled in a CHIP plan or receive those benefits. 2023 CAA, § 5112(a), 136 Stat. at 5940. CMS "must give effect to that clear intent." *In re Gateway Radiology Consultants*, *P.A.*, 983 F.3d 1239, 1256 (11th Cir. 2020).

113.    This is not a case where "the best reading" of the 2023 CAA "is that it delegates discretionary authority to an agency." *Loper Bright Enters.*, 144 S. Ct. at 2263. The Supreme Court has "long rejected the notion that '*whatever* furthers the statute's primary objective must be the law.'" *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 434 (2018). Even if CMS believes "Congress could or should have done more, still it 'wrote the statute it wrote—meaning, a statute going so far and no further.'" *Id.* CMS has no authority to redefine "eligibility" to include "enrollment."

114.    The Final Rule therefore exceeds CMS's authority.

## COUNT THREE

### (Violation of the APA: Arbitrary or Capricious)

115.   The allegations in paragraphs 1–94 are expressly incorporated herein as if restated in full.

116.   The APA requires a reviewing court to "hold unlawful and set aside agency action" that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). Agency actions must be "the product of reasoned decisionmaking." *State Farm*, 463 U.S. at 52. That means an agency rule must "be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). The Final Rule is neither.

117.   *First,* the Final Rule is logically inconsistent. The 2023 CAA provides two circumstances in which a State no longer must provide continuous eligibility under Medicaid—the participant "attains the age of 19" or "ceases to be a resident" of the State. 2023 CAA, § 5112(a), 136 Stat. at 5940. In the Final Rule, however, CMS concluded that "three [additional] exceptions" provided for by regulation "were unaffected," specifically "if the child or child's representative requests a voluntary termination of eligibility; the agency determines that eligibility was erroneously granted at the most recent determination, redetermination, or renewal of eligibility because of agency error or fraud, abuse, or perjury attributed to the child or the child's representative; or the child is deceased." 89 Fed. Reg. at 94463; *see* 42 C.F.R. § 435.926(d). "These exceptions permit States to terminate coverage for children during a [continuous eligibility] period in specific circumstances that do not involve a

re-determination of eligibility based on a change in the beneficiary's circumstances during the [continuous eligibility] period." 89 Fed. Reg. at 94463. According to CMS, the 2023 CAA "did not foreclose termination of coverage in these situations, which are important to maintain program integrity." *Id.*

118.    CMS illogically prohibited another regulatory "exception"—disenrollment for nonpayment of premiums—that meets the same criteria. Disenrolling a CHIP participant for nonpayment or premiums also "do[es] not involve a re-determination of eligibility based on a change in the [participant's] circumstances during the [continuous eligibility] period." *Id.* And allowing disenrollment is crucial to maintaining the integrity and long-term sustainability of state CHIP plans, like Florida CHIP, that incorporate cost-sharing as a fundamental component.

119.    CMS has not explained why disenrollment does not likewise qualify as an "exception" to its construction of the 2023 CAA's continuous eligibility requirement. CMS's inconsistent and illogical decision to permit three regulatory "exceptions" while prohibiting another that meets the same criteria is arbitrary and capricious. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) ("[A]n unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." (cleaned up)).

120.    *Second*, the Final Rule eviscerates 42 U.S.C. § 1397cc(e)(3), transforming beyond recognition its allowance for state CHIP plans to both require "premiums and cost-sharing" and disenroll participants for nonpayment after "a grace period of at least

41

30 days." Reducing these provisions to premiums that cannot be enforced, and a minimum 30-day grace period that stretches to 11 months, was neither "reasonable" nor "reasonably explained." *Prometheus Radio Project*, 592 U.S. at 423.

121.    *Third*, the Final Rule "entirely failed to consider … important aspect[s] of the problem." *State Farm*, 463 U.S. at 43. Moreover, "[u]nder the 'arbitrary and capricious' standard of review, an agency is required to respond to significant comments that cast doubt on the reasonableness of the rule the agency adopts." *Hussion v. Madigan*, 950 F.2d 1546, 1554 (11th Cir. 1992) (cleaned up). In addition to the logical inconsistency discussed above, AHCA raised several significant issues in its comments that CMS failed to consider or address.

122.    CMS completely ignored the longstanding distinction between *eligibility* for CHIP benefits and *enrollment* in a CHIP plan, used by both Congress and CMS itself. *See* AHCA Comment, *supra*, at 7–8. CMS also did not address the different consequences of eligibility under CHIP and Medicaid. *Id.* at 9. Because CHIP eligibility provides individuals "the opportunity to enroll in a state-subsidized health plan," while Medicaid eligibility "entitle[s]" individuals "to state-provided health insurance coverage," the consequences of "continuous eligibility" for the two programs naturally differs. *Id.* CMS failed to respond to these straightforward critiques of its Proposed Rule.

123.    AHCA further argued that the best reading of the 2023 CAA is that applying continuous eligibility to CHIP "'in the same manner' means only that States

cannot reconsider a child's eligibility for CHIP for an entire year." AHCA Comment, *supra*, at 9. But CMS did not acknowledge this proposed reading of the 2023 CAA, much less explain why the agency rejected it.

124.    CMS likewise failed to address AHCA's contention that disenrollment at the end of a continuous eligibility period "rings hollow, because States must immediately (perhaps preemptively) re-enroll" the participant, at which time a new continuous eligibility period begins. AHCA Comment, *supra*, at 6. Instead, CMS suggested that a State can inform a past-due participant that "in order for [the participant's] coverage to be renewed for another 12 months … the family must pay the [past-due] premium" before the renewal date. 89 Fed. Reg. at 94466.

125.    That response skirts rather than addresses AHCA's concern that disenrollment followed immediately by mandatory reenrollment is meaningless. And, in any event, CMS's suggestion violates its own regulations, which provides that States "may *not* … [r]equire the collection of past due premiums … as a condition of eligibility for reenrollment if an individual was terminated for failure to pay premiums." 42 C.F.R. § 457.570(c)(2) (emphasis added).

126.    The issues AHCA raised—the logical inconsistency of the Final Rule, the fundamental difference between *eligibility* and *enrollment* in CHIP, the alternate (correct) reading of the 2023 CAA, and a blatant flaw in CMS's proposed disenrollment regime—are undoubtedly "important aspect[s] of the problem" that CMS was required to consider. *State Farm*, 463 U.S. at 43. They are also "significant

comments that cast doubt on the reasonableness" of the Final Rule that CMS was required to address. *Hussion*, 950 F.2d at 1554. Because CMS did not consider or address these issues, the Final Rule is arbitrary and capricious. *Hewitt v. Comm'r*, 21 F.4th 1336, 1352 (11th Cir. 2021).

## COUNT FOUR

### (Declaratory Judgment)

127.   The allegations in paragraphs 1–94 are expressly incorporated herein as if restated in full.

128.   Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

129.   For the same reasons described in Counts One through Count Three, Florida is entitled to a declaratory judgment that the Final Rule is contrary to law, in excess of CMS's authority, and arbitrary and capricious.

## PRAYER FOR RELIEF

Plaintiffs Florida and AHCA respectfully request that the Court:

A.     Declare that the Final Rule is unlawful, in violation of 5 U.S.C. § 706(2)(A), (C); 42 U.S.C. §§ 1396a(e)(12), 1397gg(e)(1)(K), as amended by 2023 CAA § 5112(a), (b), 136 Stat. at 5940; and 42 U.S.C. § 1397cc(a)(3), (d), (e)(3)(C);

B.     Vacate and set aside the Final Rule, as required by 5 U.S.C. § 706(2);

C.      Enjoin Defendants from enforcing the Final Rule;

D.      Award reasonable attorneys' fees and allowable costs, including under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

E.      Grant such other and further relief to which they are justly entitled at law and in equity.


Dated: January 7, 2025                  Respectfully submitted,

Ashley Moody                            */s/ Jared M. Kelson*
  *Attorney General*                    Jared M. Kelson (*PHV forthcoming*)*
                                        BOYDEN GRAY PLLC
Henry C. Whitaker (FBN 1031175)         800 Connecticut Ave NW, Suite 900
  *Solicitor General*                   Washington, DC 20006
                                        (202) 955-0620
*/s/ Natalie Christmas*                 jkelson@boydengray.com
Natalie Christmas (FBN 1019180)*
  *Counselor to the Attorney General*   Andrew T. Sheeran (FBN 0030599)
                                          *General Counsel*
OFFICE OF THE ATTORNEY GENERAL          FLORIDA AGENCY FOR HEALTH CARE
The Capitol, Pl-01                        ADMINISTRATION
Tallahassee, Florida 32399-1050         2727 Mahan Drive, Mail Stop #3
(850) 414-3300                          Tallahassee, Florida 32308
(850) 410-2672 (fax)                    (850) 412-3670
Natalie.Christmas@myfloridalegal.com    Andrew.Sheeran@ahca.myflorida.com

*\* Lead Counsel*                       *\* Lead Counsel*
*Counsel for the State of Florida*      *Counsel for Agency for Health Care*
                                          *Administration*